**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICHARD E. STEWART,**

        **Plaintiff,**

    **v.**
                             **Civil Action 2:17-cv-706**
                             **Judge James L. Graham**
                             **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Richard E. Stewart, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his Title II Social Security Disability Benefits and Title XVI Supplemental Security Income Disability applications. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED** and that judgment be entered in favor of Defendant.

## I.    BACKGROUND

### A.  Prior Proceedings

Plaintiff filed applications for Title II Social Security Disability Benefits and Title XVI Supplemental Security Disability Benefits on November 22, 2013. (*See* Doc. 7-3, Tr. 201, 215, PAGEID #: 242, 256). In both applications, Plaintiff alleged disability beginning September 12, 2012. (*Id.*). After Plaintiff's applications were denied initially and on reconsideration (Doc. 7-4, Tr. 263–67, 271–74, PAGEID #: 305–09, 313–16), Plaintiff requested a hearing by an Administrative Law Judge (*id.*, Tr. 279, PAGEID #: 321).

Administrative Law Judge Deborah Ellis (the "ALJ") held a video hearing on March 30, 2016. (Doc. 7-2, Tr. 105–49, PAGEID #: 145–89). On May 19, 2016, the ALJ issued a decision

finding that Plaintiff was not disabled as defined in the Social Security Act. (*Id.*, Tr. 44–58, PAGEID #: 84–98). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.*, Tr. 1, PAGEID #: 41).

Plaintiff filed this case on August 14, 2017 (Doc. 1-2), and the Commissioner filed the administrative record on October 23, 2017 (Doc. 7). Plaintiff filed a Statement of Specific Errors (Doc. 8), the Commissioner responded (Doc. 112), and Plaintiff filed a Reply (Doc. 13).

### B. Relevant Medical Background

On March 30, 2010, Plaintiff saw Dr. Michael Shannon, a neurosurgeon, for his mid-back and upper dorsal pain, but Plaintiff also complained of headaches and neck pain. (Doc. 7-7, Tr. 585, PAGEID #: 630). A cervical MRI revealed stenosis at C5-6 and C6-7 with disc rupture on the left side, and Dr. Shannon recommended surgery. (*Id.*). Accordingly, on September 22, 2010, Plaintiff underwent an anterior cervical microdisckectomy at C5-6 and C6-7, as well as an interbody fusion at C5-6 and C6-7. (*Id.*, Tr. 583, 586, PAGEID #: 628, 631). At a follow up appointment with Dr. Shannon on October 11, 2010, Plaintiff had good strength, sensation, and reflexes throughout. (*Id.*, Tr. 583, PAGEID #: 628).

On March 22, 2013, Plaintiff had an MRI of his cervical spine, which showed "a very small central disc herniation at C4-5 without any noted foraminal narrowing and some disc osteophyte complex at C5-6 which does not appear to impinge on either foramen or on the spinal cord." (*Id.*, Tr. 500, 547, PAGEID #: 545, 592).

On April 11, 2013, Plaintiff saw Dr. Jeffrey Lobel for neck pain. (Doc. 7-7, Tr. 500, PAGEID #: 545). At that time, Plaintiff stated that he did not remember suffering any trauma to his neck, "but since he is a mechanic, he works with his hands and is frequently in awkward

positions while working on cars." (*Id.*). Dr. Lobel found that Plaintiff's strength in his upper extremities was intact, except for decreased strength with fingers of opposition on the right, as well as decreased sensation in a median nerve distribution on the right side. (*Id.*, Tr. 501, PAGEID #: 546). Dr. Lobel noted, however, that he did not see any evidence of a herniated disc or foraminal narrowing, and Plaintiff's right arm and hand symptoms could be due to carpal tunnel syndrome. (*Id.*, Tr. 502, PAGEID #: 547).

Plaintiff again saw Dr. Lobel on April 25, 2013, at which time he stated Plaintiff had normal range of motion, negative Spurling's sign, and negative Hoffman's sign. (*Id.*, Tr. 503, PAGEID #: 548). An x-ray and CT scan of Plaintiff's cervical spine showed only mild spondylosis and intervertebral disk space narrowing. (*Id.*, Tr. 549–52, PAGEID #: 594–97). Another cervical x-ray taken on May 29, 2013, showed that Plaintiff had a reduced range of motion with no evidence of listhesis. (*Id.*, Tr. 557–58, PAGEID #: 602–03).

On February 4, 2014, Plaintiff underwent a Psychological Examination with Psychologist James Spindler, M.S., for the Opportunities for Ohioans with Disabilities (OOD). (*Id.*, Tr. 620, PAGEID #: 665). Plaintiff reported that he had never received outpatient mental health services nor been hospitalized for psychiatric problems. (*Id.*, Tr. 622, PAGEID #: 667). During the evaluation, the psychologist noted that Plaintiff's thought associations were adequate, with no fragmentation of thought or flight of ideas (*id.*); that Plaintiff was alert, knew the exact date, and was oriented to place and person (*id.*, Tr. 623, PAGEID #: 668); and that he had the impression that Plaintiff "was over stating the impact of his depression on his daily routine" (*id.*, Tr. 624, PAGEID #: 669).

On March 10, 2014, Plaintiff saw Dr. Mark Weaver for the OOD. (*Id.*, Tr. 631, PAGEID

#: 676).  Dr. Weaver noted a negative Romberg test and good finger-to-nose apposition sense. (*Id.*, Tr. 633, PAGEID #: 678).  Dr. Weaver further found that although there was constant, mild, involuntary spasm to inspection and palpation of the lower cervical, straight leg raising was negative bilaterally and there were no organic radicular nerve root impingement findings.  (*Id.*, Tr. 643, PAGEID #: 679).  Additionally, Dr. Weaver noted that Plaintiff was alert, oriented, and his thought process appeared normal.  (*Id.*, Tr. 635, PAGEID #: 680).

Plaintiff was also seen at Genesis Healthcare System for shoulder and neck pain on January 23, 2014, March 20, 2014, and April 30, 2014.  (Doc. 7-8, Tr. 698–700, 703–08, PAGEID #: 744–46, 749–54).  During his appointments, Plaintiff reported numbness and tingling affecting his right arm, but his January appointment notes state that his light touch sensation was symmetrical in the upper and lower extremities, and his March appointment demonstrated normal motor strength, sensation, and reflexes.  (*Id.*).  Additionally, treatment notes from April state that "upon clinical examination, it is not convincing that he is suffering from facetogenic pain."  (*Id.*, Tr. 707, PAGEID #: 753).

On March 20, 2104, state agency consultant Dr. Leigh Thomas found that Plaintiff had some exertional and postural limitations, and noted his "obligatory use of cane," but ultimately opined that Plaintiff was only partially credible and not disabled.  (Doc. 7-3, Tr. 201–14, PAGEID #: 242–55).  Dr. Gary Hinzman, also a state agency consultant, affirmed Dr. Thomas's assessment on June 16, 2014.  (*Id.*, Tr. 231–45, PAGEID #: 272–86).

### C.  Relevant Testimony at the Administrative Hearing

At the outset, counsel for Plaintiff explained that Plaintiff had "a plethora of orthopedic impairments, as well as some spinal, cervical spine impairments[], and . . . severe right carpal

tunnel impairment." (Doc. 7-2, Tr. 109, PAGEID #: 149).

Plaintiff testified that he lives with his fiancée, who is on social security benefits, and his children are grown. (*Id.*, Tr. 110–11, PAGEID #: 150–51). Although Plaintiff has a driver's license, he stated that he doesn't like to drive "[b]ecause my arms go numb and a lot of times I don't have control of my, my fingers and I just don't feel safe." (*Id.*, Tr. 111–12, PAGEID #: 151–52). Plaintiff elaborated:

> My, it's like my hand and my fingers will go clear to sleep and I can't feel them, you know, I can't grasp anything or hold anything. And it's like if your foot goes to sleep and it, it's like so far gone that it's burning and stinging and if you try to press on it or it just hurts. That's the way my fingers are all the time.

(*Id.*, Tr. 112, PAGEID #: 152). As a result, Plaintiff testified that he normally doesn't go anywhere, although he tries to attend church weekly. (*Id.*, Tr. 125, 129, PAGEID #: 165, 169). Instead, Plaintiff spends most of his days "either lay[ing] in bed or lay[ing] on the couch" while watching television. (*Id.*, Tr. 132, PAGEID #: 171).

In terms of physical impairments, Plaintiff testified that he wears a brace on his right knee every day for stabilization, and without it, his "knee will hyperextend either backwards or sideways." (*Id.*, Tr. 123, PAGEID #: 163). With the brace, Plaintiff stated that he could stand and walk for "about a half-hour or so." (*Id.*). Further, Plaintiff stated that he uses a cane everywhere he goes. (*Id.*). Even with the cane, however, Plaintiff testified that it's hard for him to get down the stairs and use the bathroom in his two-story home. (*Id.*, Tr. 124, PAGEID #:164).

Plaintiff also explained that he has issues with hands—such as numbness and burning— as a result of his carpal tunnel. (*Id.*, Tr. 130, PAGEID #: 170). Plaintiff wears a wrist brace that he acknowledged "seems to help," although he stated it's hard to brush his teeth sometimes. (*Id.*,

Tr. 131–32, PAGEID #: 171–72).  However, Plaintiff testified he is able to button his shirt and tie his shoes "most of the time."  (*Id.*, Tr. 132, PAGEID #: 172).

Turning to his cervical impairments, Plaintiff testified that his neck was doing "really well after my [neck] surgery [in 2010] until about 12 months later, and then it exactly [sic] like it did before my surgery."  (*Id.*, Tr. 125, PAGEID #: 165).  Plaintiff further described his neck impairments to the ALJ:

> My neck constantly hurts, it makes me have intense headaches almost daily.  I can't move my head, I don't have the movement like I used to, I can only move my head certain part [sic], and if I try to move my head the pain radiates down into my mid-back and in my right shoulder.  I have muscle spasms all day long, even though when I lay down and try to sleep my muscles are just spasming and I can't, it's hard for me to get any sleep.  I just can't get comfortable, which is I'm [sic] all the time."

(*Id.*, Tr. 125, PAGEID #: 165).  Plaintiff explained that two surgeons opined that they couldn't fix his neck without surgery, but he is "really afraid to do that."  (*Id.*, Tr. 126, PAGEID #: 166).  He also stated that he has received several injections that have not helped and he uses a TENS unit every other day.  (*Id.*).  Plaintiff is prescribed several medications for pain, but testified that the opiates cause constipation and have negatively impacted his ability to have a sexual relationship.  (*Id.*, Tr. 127, PAGEID #: 167).

Plaintiff's only testimony regarding mental impairments was when he explained that he saw a life coach for eight or nine months because he was "in pain all the time, depression and other mental issues come along with it and I was trying to get help for it."  (*Id.*, Tr. 120, PAGEID #: 160).

### D.  The ALJ's Decision

The ALJ found that Plaintiff suffered from the following severe impairments:

osteoarthritis and allied disorders, degenerative disc disease of the cervical spine, status post right rotator cuff repair, right sided carpal tunnel syndrome and other arthralgias. (Doc. 7-2, Tr. 46, PAGEID #: 86). Further, the ALJ found that although Plaintiff was diagnosed with depression, anxiety, and substance addiction disorder, these mental impairments did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.*, Tr. 47, PAGEID #: 87).

Despite Plaintiff's impairments, the ALJ found that none met the criteria of any listed impairments described in Appendix 1 of the Regulations. (*Id.*, Tr. 48, PAGEID #: 88). In reaching that conclusion, the ALJ stated that she paid "particular attention" to Listing 1.02 and 1.04, but "[t]he medical evidence did not document listing-level severity and no acceptable medical source ha[d] mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (*Id.*). Further, the ALJ noted that her conclusion was supported by the state agency medical consultants, who reviewed the record and came to the same conclusions. (*Id.* (citing Ex. 1A; 2A; 5A; 6A)).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ stated:

[T]he claimant has the residual functional capacity to lift ten pounds occasionally and less than ten pounds frequently using his hand that is not using a can while ambulating. The claimant requires the use of a handheld device to ambulate. He can occasionally carry ten pounds and frequently carry less than ten pounds with the hand he is not using to carry his cane while walking. The claimant can push and/or pull as much as he can lift and carry. The claimant can sit for a total of six hours out of an eight-hour workday and stand or walk for a total of four hours of an eight-hour workday. The claimant can operate foot controls with his lower extremities on a frequent basis bilaterally. The claimant can operate hand controls with his upper extremities on a frequent basis bilaterally. The claimant can occasionally use his upper extremities for overhead reaching and can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, occasionally balance and kneel. The claimant can frequently stoop and never crouch or crawl. The claimant must avoid all exposure to unprotected

heights, moving mechanical parts and he can never operate a motor vehicle.

(*Id.*, Tr. 49, PAGEID #: 89).

Ultimately, the ALJ found that Plaintiff's "statements regarding the severity of his limitations [were] not entirely consistent with the evidence." (*Id.*, Tr. 55, PAGEID #: 95). More specifically, the ALJ explained that the medical evidence did not support Plaintiff's allegations:

> The claimant testified that his knee impairments prevented him from standing for more than a half hour at a time and that he required the use of can whenever he walked. While the medical record indicates that the claimant consistently reported pain in his right knee and imaging showed osteoarthritis in his right knee, it also indicates that the claimant's knee pain was treated with conservative measures and there was no signs of laxity or instability in either of the claimant's knees (Ex. 8F/9–10; 20F/11–12). In addition, while the claimant sought and received a prescription for a single point cane in July 2014, exams both before and after July 2014 indicated that the claimant was able to ambulate unassisted (Ex. 16F/3–11, 19F/7; 20F/6–7; 21F/23). In addition, multiple exams in 2015 showed a normal range of motion in his musculoskeletal system despite his osteoarthritis in his knees (Ex. 22F/1–2; 26F/64).
> ***
> The claimant also testified that his cervical impairment and carpal tunnel syndrome caused numbness in his hands and arms. However, while the exams from 2015 showed the claimant had slightly reduced strength in his upper extremities, they also showed that the claimant had normal sensation in his hands and upper extremities as late as December 2015 (Ex. 12F/5; 19F/7; 22F/2; 26F/64). In addition, during the claimant's consultative exam in March 2014, he had no difficulty handling and manipulating objects with either hand and in December 2015, his grip strength was noted as equal and symmetrical (Ex. 12F/5; 26F/64).

(*Id.*). This medical evidence, coupled with what the ALJ described as inconsistencies in Plaintiff's work history and activities of daily living, led the ALJ to conclude that Plaintiff's statements did "not support any additional limitations in his residual functional capacity." (*Id.*, Tr. 55–56, PAGEID #: 95–96).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).  "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III.    DISCUSSION

Plaintiff asserts four assignments of error:  (1) the ALJ failed to recognize and consider Plaintiff's headaches as a medically determinable impairment; (2) the ALJ erroneously held that Plaintiff's depression and anxiety are non-severe impairments; (3) the ALJ failed to properly evaluate Plaintiff's impairments under Medical Listing 1.04A; and (4) the ALJ improperly evaluated Plaintiff's credibility under SSR 96-7P.  (Doc. 8).

### A.  Plaintiff's Headaches

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment*[.]" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651–52 (6th Cir. 2009) (citing 42 U.S.C.

§ 423(d)(1)(A)). The Social Security regulations make clear that an individual's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [an individual's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529. Indeed, "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*

Plaintiff argues that the ALJ failed to classify his headaches as a medically determinable impairment. (Doc. 8 at 13–15). Indeed, Plaintiff argues "the record is replete with documentation and diagnoses of [his] chronic headaches." (*Id.* at 14, citing PAGEID #: 165; 630; 698; 709; 714; 746; 792; 805; 807; 838; 859; 868; 883; 887; 895; 966). Plaintiff thus avers that because the ALJ failed to recognize his "chronic headaches in any capacity," and the potential impact of the headaches on Plaintiff, the RFC is not supported by substantial evidence. (*Id.* at 15). The Court disagrees.

As the Commissioner correctly notes, Plaintiff points to no objective medical findings that would lead the ALJ to conclude that his headaches qualify as a medically determinable impairment. Indeed, Plaintiff is unable to articulate, or reference any medical record that documents, any limitations Plaintiff has as a result of his headaches. Instead, Plaintiff cites to records that demonstrate he complained of headaches, but as noted above, this allegation of pain alone is insufficient to qualify as a medically determinable impairment.

Finally, it is worth noting that Plaintiff made no mention of his headaches when he applied for benefits (*see* Doc. 12 at 11; Doc. 7-3, Tr. 201, 215, PAGEID #: 242, 256), further supporting the ALJ's determination that Plaintiff's headaches were not a medically determinable impairment. *See Griffith v. Colvin*, No. 6:13-23, 2013 WL 5536476, at *3 (E.D. Ky. Oct. 7, 2013) (holding that because, *inter alia*, the plaintiff did not allege an intellectual impairment in her application for SSI, evidence supported ALJ's conclusion that the plaintiff did not have a medically determinable intellectual impairment).

The Court thus finds that substantial evidence supports the ALJ's conclusion that Plaintiff's headaches were not a separate medically determinable impairment.

### B. Non-Severe Impairments

Under 20 C.F.R. § 404.1520(a)(4)(ii), at Step Two of the disability evaluation process, the ALJ must determine the severity of Plaintiff's alleged impairments. "An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which are defined as "those abilities and aptitudes necessary to do most jobs." *Dyer v. Colvin*, No. CV 14-156-DLB, 2016 WL 1077906, at *3 (E.D. Ky. Mar. 17, 2016) (citing 20 C.F.R. § 404.1521(b))." An impairment or combination of impairments is not severe, however, "if it does not significantly limit [an individual's] ability to do basic work activities." 20 C.F.R. §§ 404.1521.[1] Plaintiff argues that the ALJ's decision to classify his depression and anxiety as non-severe impairments "cannot be considered harmless error because both conditions impact his ability to perform work activities on a sustained basis." (Doc. 8 at 10). Additionally, Plaintiff argues that his mental limitations "clearly affect his ability to perform substantial gainful activity" and should have been included in the ALJ's RFC determination. (*Id.* at 12).

---

[1] This section, although no longer in effect, was effective at the time of the ALJ's decision.

The Sixth Circuit has explained the Step Two analysis as follows:

This circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers*, 486 F.3d at 243 n. 2 (internal quotation marks and citation omitted), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." Soc. Sec. Rul. 96–3p, 1996 WL 374181 at * 1 (1996). After an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5 (emphasis added). And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

*Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

Because the regulations require an ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, once a severe impairment is found, all impairments, regardless of how they are classified, are then analyzed in the ALJ's RFC determination. *See Dyer*, 2016 WL 1077906, at *3; *see also Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) ("[O]nce an ALJ determines that one or more impairments is severe, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.'") (quoting *Fisk v. Astrue*, 253 F. App'x. 580, 583 (6th Cir. 2007)). "For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis." *Id.*

Here, the ALJ provided an extensive discussion of Plaintiff's mental impairments of depression, anxiety and substance addiction disorder. (Doc. 7-2, Tr. 47, PAGEID #: 87).

Specifically, the ALJ found that (1) Plaintiff had mild limitations in activities of daily living because Plaintiff's grooming and personal hygiene were adequate, he was able to care for his personal needs, he was able to attend church, and the reason he didn't go anywhere on a regular basis was based on physical impairments, not mental limitations; (2) Plaintiff had mild limitations in social functioning, as the medical record did not show Plaintiff had any difficulty interacting with treatment providers, he reported getting along with his mother and children "pretty well", and there was no indication Plaintiff was ever fired or laid off from a job due to difficulty getting along with others; and (3) Plaintiff had only mild limitations in concentration, persistence, or pace, based in part on the fact that his psychiatric exam in September 2014 showed his thought process was clear and linear, his judgment and insight were intact, and he was well oriented to person, time, and place, in addition to the fact that no memory problems or problems with concentration or attention were noted. (*Id.*, Tr. 47–48, PAGEID #: 87–88). The ALJ then explained that because Plaintiff's mental impairments caused no more than "mild" limitations, and he had experienced no episodes of decompensation, his impairments were non-severe. (*Id.*, Tr. 48, PAGEID #: 88).

Ultimately, the ALJ reasonably relied on this evidence in finding that Plaintiff's mental impairments did not result in significant limitations. But even if this Court found that the ALJ improperly classified Plaintiff's mental impairments as non-severe, the ALJ considered the effect of all Plaintiff's impairments—both severe and non-severe (*see* Doc. 7-2, Tr. 49–55, PAGEID #: 89–95)—"throughout the remaining steps of the analysis [thus] render[ing] any error harmless." *Nejat*, 359 F. App'x at 577; *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the ALJ properly considered the impairment classified

as non-severe "in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the ALJ's failure to classify that impairment as severe "could not constitute reversible error.").

### C. Medical Listing 1.04A

"The third step in the sequential evaluation for disability benefits requires a determination of whether an impairment or a combination of impairments meets or equals one or more of the medical conditions listed in Appendix 1." *Gulley v. Comm'r of Soc. Sec.*, No. 1:16-CV-923, 2017 WL 4329632, at *3 (S.D. Ohio Aug. 3, 2017), *report and recommendation adopted*, No. 1:16CV923, 2017 WL 4310531 (S.D. Ohio Sept. 28, 2017) (citing 20 C.F.R. §§ 416.920, 416.925, 416.926)). An impairment meets one of the listed impairments "when it manifests the specific findings described in the medical criteria for that particular impairment." *See, e.g.*, *Garza v. Comm'r of Soc. Sec.*, No. 1:14-CV-1150, 2015 WL 8922011, at *3 (W.D. Mich. Nov. 25, 2015) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1525(c), 416.925(c)). It is well-settled that a claimant does not satisfy a particular listing unless *all* of the requirements of the listing are present. *See, e.g.*, *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002); *see also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment."). Ultimately, it is the claimant's burden to provide evidence that he meets or equals a listed impairment. *E.g.*, *Gulley*, 2017 WL 4329632, at *3 (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).

Here, Plaintiff argues that he put forth sufficient evidence to demonstrate that his impairments met and/or equaled Listing 1.04A for disorders of the spine, and the ALJ

inappropriately disregarded that evidence.  (Doc. 8 at 6–10).  Plaintiff further contends that the

ALJ insufficiently explained why she found that Plaintiff did not meet the Listing.  The Court

finds both arguments meritless.

### 1. Plaintiff Did Not Provide Sufficient Evidence

Listing 1.04A states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Subpt. P. Appx. 1, Listing 1.04A.  In other words, for Plaintiff to have been found

disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in 'compromise

of a nerve root' with (3) 'neuro-anatomic distribution of pain,' (4) 'limitation of motion of the

spine,' *and* (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss."

*Gulley*, 2017 WL 4329632, at *3 (emphasis added).

Plaintiff states that he has residual spurring posterior at C5-6, mild broad-based disk

protrusion at C4-5, numbness and tingling in his upper extremities, paraspinal spasms, and

reduced range of motion.  (Doc. 8 at 7).  These "objective findings" according to Plaintiff,

"satisfy the first prong of Listing 1.04 by showing evidence of nerve root compression[.]"  (*Id.*).

However, none of the medical records expressly state that Plaintiff suffers from nerve root

compression.  Indeed, a March 22, 2013 MRI showed mild broad-based disk protrusion like

Plaintiff noted, but *without* significant cord impingement (Doc. 7-7, Tr. 548, PAGEID #: 593),

and at a March 10, 2014 appointment Dr. Weaver noted there was no radicular nerve root impingement findings. (*Id.*, Tr. 643, PAGEID #: 679). *See Roberts v. Comm'r of Soc. Sec.*, No. 12-14661, 2013 WL 6062018, at *16 (E.D. Mich. Nov. 18, 2013) (equating nerve root impingement with nerve root compression).

"While there is some variation in the case law concerning the quantity of proof of actual 'compression' that is required to satisfy Listing 1.04A, many courts require fairly explicit evidence." *Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-CV-926, 2017 WL 5020137, at *4 (S.D. Ohio Nov. 3, 2017) (citing *Adams v. Comm'r of Soc. Sec.*, 2014 WL 897381, at *9 n. 5 (E.D. Mich. Mar. 6, 2014) (noting that recent MRI results would not have altered the ALJ's decision on nerve root compression because they "indicate only that a disc protrusion *'abuts* the S1 nerve roots,' not that there is evidence of nerve root *compression*"); *Barnes v. Comm'r of Soc. Sec.*, 2013 WL 6328835, at *9 (E.D. Mich. Dec. 5, 2013) ("[Claimant's] x-ray and CT scan show degenerative disc disease and spinal canal stenosis, but there is no mention of nerve root compression in the radiologist's reports.")).

At base, inferring nerve root compression based on Plaintiff's complaints of numbness, pain, and reduced range of motion, is not enough to satisfy the Listing. *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709 (E.D. Mich. 2011) ("An implication, based on radiating pain, is not enough to satisfy the Listing." (citing *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio 2009) (Treating physician's opinion that plaintiff met the Listing for chronic radiculopathy was insufficient to satisfy the listing where medical records stated that there was no nerve root compression.); *see also Adams v. Comm'r of Soc. Sec.*, No. 14-CV-14724, 2016 WL 1084681, at *4 (E.D. Mich. Mar. 21, 2016) ("To warrant remand, '[a] claimant must do

more than point to evidence on which the ALJ could have based his finding ... [r]ather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.'") (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014)).

Additionally, although Plaintiff contends that the record demonstrates reduced range of motion, there are just as many records, if not more, that document normal spinal and neck range of motion. (*See* Doc. 12 at 5 (listing record cites)). Further, Plaintiff is unable to point to any evidence showing motor loss or loss of reflex, which is required by the Listing. *See Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709 (E.D. Mich. 2011). Thus, the undersigned agrees with the Commissioner that Plaintiff failed to meet his burden of proof and there is no basis to disturb the ALJ's findings.

### 2. The ALJ Properly Explained Her Decision Regarding Listing 1.04

Plaintiff also argues that the ALJ failed to provide a detailed explanation of her conclusion that the Listing was not met or equaled, as the Sixth Circuit required in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011). (Doc. 8 at 9). In short, *Reynolds* held that a court must "actually evaluate the evidence" and "give an explained conclusion" for why a plaintiff did not meet a listing. *Reynolds*, 424 F. App'x at 416. The undersigned finds that the ALJ sufficiently articulated her Step Three findings under this precedent.

The ALJ noted that she was paying particular attention to Listing 1.04 but found no acceptable medical source had mentioned findings equivalent in severity to the listed impairment. (Doc. 7-2, Tr. 48, PAGEID #: 88). Further, the ALJ's opinion reflects her consideration of Plaintiff's neck impairments. For example, the ALJ acknowledged that

Plaintiff's motor strength and sensation was normal in May 2012 (*Id.*, Tr. 50, PAGEID #: 90 (citing Ex. 8F/9–10)); an April 2013 MRI showed no impingement of the spinal cord (*id.* (citing 8F/27)); Plaintiff had normal range of motion in his neck in April 2013 (*id.*, Tr. 51, PAGEID #: 91 (citing 5F/7)); Plaintiff exhibited five out of five strength in all areas tested in January 2014 (*id.* (citing Ex. 15F/8)); Plaintiff showed normal motor strength, normal sensation and normal reflexes in January 2014 (*id.*, Tr. 52, PAGEID #: 92 (citing Ex. 19F/7)); and examinations revealed normal range of motion in Plaintiff's neck in March 2015 and December 2015, respectively (*id.*, Tr. 53, PAGEID #: 93 (citing 22F/1–2, 26F/64)).

While the ALJ's discussion regarding Listing 1.04 appeared in a different section of her opinion, that does not render her Step Three findings inadequate. *See Bukowski v. Comm'r of Soc. Sec.*, No. 13-CV-12040, 2014 WL 4823861, at *2 (E.D. Mich. Sept. 26, 2014). Indeed, "district courts in this circuit have consistently found that an ALJ is under no obligation to spell out every consideration that went into the step three determination or the weight he gave each factor in his step three analysis[.]" *Id.* (quotations and citations omitted) (listing cases).

The Court thus concludes that the ALJ's findings as to Listing 1.04 were sufficiently articulated as to facilitate meaningful judicial review.

### D. Credibility Determination

Finally, Plaintiff argues the ALJ improperly evaluated his credibility under SSR 96-7P. (Doc. 8 at 15–16). As an initial matter, however, SSR 96-7p, 1996 WL 374186 (July 2, 1996) was no longer in effect at the time of the ALJ's decision. Instead, that regulation was superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminates the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an

individual's character." SSR 16-3p, 2016 WL 1119029 at *1. The new ruling directs the ALJ to consider whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. *Id.*, 2016 WL 1119029 at *7.

Here, Plaintiff argues that the ALJ's determination that Plaintiff's statements were not entirely consistent with the evidence is erroneous. (Doc. 8 at 15). In support, Plaintiff contends that the ALJ's "three-page recitation of the evidence" documents Plaintiff's consistent treatment and test results that are consistent with his testimony. (*Id.* at 15–16). According to Plaintiff, the ALJ ignored this evidence and instead "cherry-picked statements from the record to support her erroneous RFC." (*Id.* at 16). This Court disagrees.

The ALJ ultimately concluded that Plaintiff's statements regarding the severity of his limitations were not consistent with his conservative treatment, diagnostic testing, his alleged work history, and his activities of daily living. (*See* Doc. 7-2, Tr. 55, PAGEID #: 95). For example, although Plaintiff testified that his impairments left him unable to work since September 2012, as late as October 2013, Plaintiff reported right knee pain "after wearing a brace and *working all day*." (*Id.* (citing Ex. 3D/4; 20F/11) (emphasis added)). Additionally, the ALJ found that Plaintiff's own reports of daily living undermined his credibility and did not support the severity of his allegations. (Doc. 7-2, Tr. 55, PAGEID #: 95). Plaintiff testified during the hearing that his fiancé "does most of the cleaning" (*Id.*, Tr. 140, PAGEID #: 180), yet the ALJ noted in May 2015, Plaintiff reported "that he felt he had too much of the responsibility in caring for his home and that if he did not do things around the house, they did not get done (Ex. 27F/18)." (*Id.*, Tr. 55–56, PAGEID #: 95–96).

Thus, despite Plaintiff's argument, these inconsistencies and treatment options were proper factors for the ALJ to consider. *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (finding a plaintiff's testimony not fully credible because his claims "that he suffered from severe pain and had disabling functional limitations was at odds with the medical and work-history evidence in the record."). That the ALJ detailed Plaintiff's impairments over three pages of her opinion indicates the analysis was thorough, not that it was erroneous.

Ultimately, the Court must accord great deference to an ALJ's credibility assessment, particularly because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). To that end, it is not the province of the reviewing court to "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In this case, the ALJ set forth the various factors that she considered in her credibility assessment, including specific citations to medical records, treatment regimen, testimony at the hearing regarding Plaintiff's work history and activities. (*See* Doc. 7-2, Tr. 55–56, PAGEID #: 95–96). Thus, the ALJ complied with the regulations, and her decision not to accept Plaintiff's subjective complaints was supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

20

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED** and that judgment be entered in favor of Defendant.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: March 23, 2018                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE